# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

|  |  |
|---|---|
| REBECCA HIRSCH, AMANDA CARLTON, PRASANNA RAMAKRISHNAN, and MICHELE O'DELL, *individually and behalf of all others similarly situated*, | Case No.: SACV 21-01355-CJC (DFMx) |
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [Dkt. 18] |
| v. | |
| BHS HOME APPLIANCES CORPORATION, | |
| Defendant. | |

## I.   INTRODUCTION

On August 17, 2021, Plaintiffs Rebecca Hirsch, Prasanna Ramakrishnan, Amanda Carlton, and Michele O'Dell filed this putative class action against Defendant BHS

Home Appliances Corporation d/b/a Bosch (hereinafter "Bosch"), alleging claims for breach of implied warranty, breach of express warranty, breach of contract/breach of common law warranty, unjust enrichment, fraudulent concealment, violations of California's Legal Remedies Act, violations of California's Unfair Competition Law, violations of Illinois' Consumer Fraud and Deceptive Trade Practices Act, violations of Colorado's Consumer Protection Act, and violations of Florida's Deceptive and Unfair Trade Practices Act.  (Dkt. 1 [Complaint, hereinafter "Compl."].)  Plaintiffs' claims arise from an alleged defect in Bosch's 800 series microwave/oven combination product.  (*Id.* ¶ 2.)  Now before the Court is Bosch's motion to dismiss Plaintiffs' Complaint.  (Dkt. 18 [hereinafter "Mot.'].)  For the following reasons, Defendant's motion is **GRANTED IN PART AND DENIED IN PART**.[1]

## II.    BACKGROUND

Bosch is one of the largest technological companies in the world.  It designs, manufactures, and sells a variety of products, including kitchen appliances such as microwaves and ovens.  (*Id.* ¶ 1.)  One of Bosch's appliances is its 800 Series stainless steel microwave/oven combinations.  (*Id.* ¶ 2.)  During the putative class period, Bosch offered Series 800 wall ovens that contain a microwave on top of a convection oven, including (but not limited to) product numbers HBL8743UC, HBL8751UC, HBL8753UC, and HBL87M53UC (hereinafter and collectively "Microwave/Ovens").  (*Id.* ¶ 3.)  All of the Series 800 Microwave/Ovens are designed, manufactured, and sold with the same or substantially similar control panels.  (*Id.*)

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for July 25, 2022, at 1:30 p.m. is hereby vacated and off calendar.

Plaintiffs are all individuals who purchased the 800 Series Microwave/Ovens. (*Id.* ¶ 60 ["Ms. Hirsch purchased her Bosch 800 Series Microwave/Oven from a home appliance store in November of 2015 for just over $5,400.00."]; ¶ 74 ["Mr. Ramakrishnan purchased his Bosch 800 Series Microwave/Oven in February of 2018 for approximately $5000."]; ¶ 86 ["Ms. Carlton purchased her Bosch Model HBL87M53UC from Appliance Outlet in May of 2020 for $3499."]; ¶ 96 ["Ms. O'Dell purchased her Bosch 800 Series Microwave/Oven from Aggressive Appliances in February of 2018 for $3669."].)  Each allege that the displays on the control panels of their respective Microwave/Oven units faded after purchasing and installing the product in their homes and after using the Microwave/Oven as intended. (*Id.* ¶ 63 ["On or around September of 2019, Ms. Hirsch's Microwave/Oven display had faded to the point it was no longer reasonable, or acceptable for use."]; ¶ 76 ["Within a year of his purchase, Mr. Ramakrishnan noticed that the display on the Microwave/Oven was faded."]; ¶ 88 ["Almost immediately after installation, Ms. Carlton noticed the display on the microwave was dimmer than that of the convection oven."]; ¶ 99 ["Within the first few months of using the Microwave/Oven, Ms. O'Dell began to notice issues with the display, which appeared faint."].)  Each Plaintiff also alleges that they put Bosch on direct notice of the issue with the control panel display either through Bosch or through Bosch's authorized repair company. (*Id.* ¶ 65 ["Ms. Hirsch emailed Bosch and put them on notice of the problems she experienced with her Microwave/Oven."][2]; ¶ 78 ["In 2019, Mr. Ramakrishnan first contacted Bosch and put them on notice of the problems he

---

[2] In full, Ms. Hirsch's email stated:

> I am having the same issue as it appears hundreds of other people are having, that the display is getting dimmer and dimmer, and almost impossible to read.  We had out kitchen cabinets built Around [sic] this appliance assuming it would be a quality appliance, so we cannot easily replace it.  I see from the reviews that this is a known problem.  Is there a fix available, is the warranty extended, and how can this be resolved?  I have not yet looked to see if there is a class action regarding this issue.

(Compl. ¶ 65.)

experienced with his Microwave/Oven."]; ¶ 90 ["In March of 2021, Ms. Carlton contacted Bosch and put them on notice of the problems she experienced with her Microwave/Oven."]; ¶ 98 [Ms. O'Dell contacted Bosch, who authorized a repair of the Microwave/Oven."].)

Plaintiffs allege, individually and on behalf of others, that the Microwave/Ovens contain a defect that makes them unsuitable for their intended use. (*Id.* ¶ 5.) Specifically, the Microwave/Ovens are defectively designed and/or manufactured such that, with normal and intended use, the display on the control panels dims or fades to the point where it becomes unreadable. (*Id.*) Plaintiffs allege that the control panels are "essentially the steering wheel of the Microwave/Ovens, which cannot operate properly or safely without" a defect-free control panel. (*Id.* ¶ 6.)

Plaintiffs also allege that Bosch has deliberately and willfully concealed the defect from its consumers; that Bosch knew or should have known about the defect; and that Bosch failed to disclose the known defect or provide its consumers with a non-defective replacement. (*Id.* ¶¶ 7–9; ¶¶ 104–121.) Instead, Bosch replaced each defective unit with another defective unit. (*Id.* ¶ 9.)

Plaintiffs identify five separate putative classes in their Complaint. The first is a national class of "all persons residing in the United States who purchased a 800 series Bosch 800 Series Microwave/Oven." (*Id.* ¶ 146.) Plaintiff Hirsch brings a putative California class of "all persons residing in the State of California who purchased a Bosch 800 Series Microwave/Oven." (*Id.* ¶ 147.) Plaintiff Ramakrishnan brings a putative Illinois class on behalf of "all persons residing in the State of Illinois who purchased a Bosch 800 Series Microwave/Oven." (*Id.* ¶148.) Plaintiff Carlton brings a putative class on behalf of "all persons residing in the State of Colorado who purchased a Bosch 800 Series Microwave/Oven." (*Id.* ¶149.) And Plaintiff O'Dell brings a putative class on

behalf of "all persons residing in the State of Florida who purchased a Bosch 800 Series Microwave/Oven." (*Id.* ¶ 150.)

## III.   LEGAL STANDARDS

### A. 12(b)(1)

"A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)).  To satisfy Article III's standing requirement, "a plaintiff must show (1) that it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

### B. 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's claims.  The issue on a motion to dismiss for failure to state a claim is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021).  When evaluating a Rule 12(b)(6) motion, the district court

must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). To survive a motion to dismiss, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must contain well-pleaded factual allegations, not legal conclusions, that "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## IV.    DISCUSSION

### A. Standing to Assert Common Law Claims on Behalf of a Nationwide Class

Bosch argues that Plaintiffs lack standing to assert claims under the laws of states in which they neither reside nor were injured on behalf of a nationwide class. (Mot. at 3.) More specifically, Bosch argues that Plaintiffs' common law claims should be dismissed for lack of standing to the extent they are asserted on behalf of putative class members whose claims do not arise under California, Colorado, Florida, or Illinois law (where the named Plaintiffs in this action reside). In opposition, Plaintiffs clarified that California common law should apply to all of Plaintiffs' common law claims. (Dkt. 23 [Plaintiffs' Opposition to Defendant's Motion to Dismiss, hereinafter "Opp."] at 4–6.)

Bosch is correct that in a putative class action "at least one named plaintiff must have Article III standing for each asserted claim." *Hoffman v. Blattner Energy, Inc.*, 315 F.R.D. 324, 333 (C.D. Cal. 201). But given Plaintiffs' representation that all their common law claims are asserted under California law and Bosch's concession that no

standing issue arises in such cases, the issue is moot.  (Dkt. 25 [Defendant's Reply ISO Motion to Dismiss, hereinafter "Reply"] at 2 ["Bosch nevertheless takes the Plaintiffs at their word that they only intend to assert California common law claims on behalf of the nationwide class[.]"].)  The Court finds that Plaintiffs do have standing to assert their common law claims pursuant to California law on behalf of a nationwide class.

**B.  Standing to Seek Injunctive Relief Against Bosch**

Bosch also argues that Plaintiffs lack standing to seek prospective injunctive relief because Plaintiffs cannot "'demonstrate a real and immediate threat of repeated injury in the future'" as required.  (Mot. at 4 [quoting *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011)].)  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992).  In a class action, "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers–Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

Plaintiffs here make no showing that they have standing to seek prospective injunctive relief.  That is because they seek injunctive relief to prevent "the likelihood of future irreparable harm by purchasing *another* Microwave/Oven with the same Defect[.]" (Compl. ¶¶ 277 [emphasis added], 293 [emphasis added], 313 [emphasis added].)  But Plaintiffs do not allege that they are likely to purchase a Series 800 in the future, and if they did, such an allegation would likely be implausible because it seems to contradict the heart of Plaintiffs' complaint: the Series 800 Microwave/Ovens are defective and Bosch's manner of remedying the defect, replacing and/or fixing the Microwave/Ovens, is not satisfactory.  (*See id.* ¶ 9 ["[R]ather than providing consumers with new, non-defective Microwave/Ovens after their units failed as a result of the Defect, Bosch either

replaces each defective unit with another defective unit, provides a new, similarly defective Control Panel that fails to remedy the problem, or improperly denies the warranty claim."]; ¶ 12 ["As a direct and proximate result of Bosch's concealment of the defect, its failure to warn customers about the Defect before their purchase, and its failure to recall the Microwave/Ovens or remedy the Defect, Plaintiffs and other similarly situated customers . . . purchased and used Bosch's defective Microwave/Ovens when they otherwise would not have made such purchases on the same terms or at all[.]"); *see* *Wolf v. Hewlett-Packard Co.*, 2016 WL 8931307, at *9 (C.D. Cal. Apr. 18, 2016) ("Plaintiff has not alleged that she will purchase Defendant's printer in the future in reliance on the allegedly false advertising—and it would be impossible to do so, as she now possesses knowledge of the alleged falsity of the 'Smart Feature' advertisement."); *Gershman v. Bayer HealthCare LLC*, 2015 WL 2170214, at *8 (N.D. Cal. May, 8, 2015) ("Plaintiffs do not allege that they intend to purchase the Product again in the future. Indeed, the FAC states that Plaintiffs 'would not have purchased the Product had they known that Bayer's brain function and brain support representations were false and misleading.' It is entirely implausible that Plaintiffs risk being harmed by the Product again."). Thus, Plaintiffs' prayer for prospective injunctive relief pursuant to Illinois' Consumer Fraud and Deceptive Trade Practices Act, Colorado's Consumer Protection Act, and Florida's Deceptive and Unfair Trade Practices Act, is **DISMISSED**.

**C. Express Warranty**

Bosch argues that Plaintiffs' express warranty claim fails as a matter of law because Plaintiffs allege a design defect which is not covered by the terms of Bosch's express warranty. (Mot. at 7.) According to Plaintiffs, Bosch's Limited Product Warranty provides that "the [ovens are] free from defect in *materials and workmanship for a period of 365 days from the date of purchase*" and that Bosch will provide repairs without charge if the ovens "prove[] to have been *manufactured with a defect in*

*materials or workmanship*." (Compl. ¶ 44 [emphases added].) Plaintiffs seem to concede that the express warranty only applies to manufacturing defects rather than design defects, arguing instead that Plaintiffs have alleged both a design defect and a manufacturing/workmanship defect. (*See* Opp. at 10–12.) The Court agrees with Bosch that Plaintiffs have failed to state a claim for breach of an express warranty because their allegations concern a design defect rather than manufacturing defect.

"A design defect exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective." *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1024 (N.D. Cal. 2012); *see also Martell v. General Motors LLC*, 492 F. Supp. 3d 1131, 1139–40 (D. Oreg. 2020) ("A design defect, however, occurs when a manufacturer builds a product exactly how it was designed, but the design itself is defective). A manufacturing defect, on the other hand, "occurs when a manufacturer constructs a single product in a substandard manner, generally resulting in a deviation from the manufacturer's intended result or from other seemingly identical products." *Martell*, 492 F. Supp. 3d at 1139. Throughout the Complaint, Plaintiffs' allege only a design defect with respect to the Microwave/Ovens.

Plaintiffs allege that the defective control panels were designed and manufactured with a vacuum fluorescent display ("VFD"). (Compl. ¶ 30.) They also allege that this was a poor design choice because liquid crystal displays have almost entirely replaced VFD's in household appliances since "they are more reliable and easier to use from an electrical standpoint." (*Id.*) Plaintiffs explain that the VFD uses filaments to conduct electrical current that causes the display characters on the control panel to glow, showing time, temperature, and other indicators. (*Id.* ¶ 31.) The voltage for the display is generated by part of the power supply circuit. (*Id.* ¶ 32.) The voltage energizes the display filaments and the resulting filament current causes the display to illuminate and the characters on it to become visible. (*Id.*) However, Plaintiffs note that the "industry

standards" applicable to this type of display system require that the current should be controlled, not the voltage. (*Id.* ¶ 33.) If the current is not properly regulated, then the control panel display may have a decreased life expectancy. (*Id.*) In the Microwave/Ovens at issue in this case, Plaintiffs allege that the "Control Panels contain a defect in that the display system wherein the voltage, rather than the current is controlled. This causes the display of the Control Panels to burn out in an accelerated manner, leading to the display fading beyond any use ("the Defect")." (*Id.* ¶ 34.)

The upshot of Plaintiffs' allegations concerning the defect is that the Microwave/Ovens are defective because only the voltage is controlled, rather than the current. In other words, the Microwave/Ovens are defective because Bosch *designed* them to regulate voltage rather than the current. Contrary to Plaintiffs' assertions, there are no allegations that Bosch designed the product in a particular way, but the filaments used in the Microwave/Ovens were faulty or of poor quality. There are no allegations that Bosch used old power supply circuits or substandard wiring. And there are no allegations that the way the Microwave/Ovens were put together was sloppy or not the intended result. Thus, Plaintiffs allege a design defect, not a manufacturing defect.

Turning to the express warranty, it is clear that it only applies to manufacturing defects and not design defects. The plain language provides that "the [ovens are] free from defect in *materials and workmanship* for a period of 365 days from the date of purchase" and that Bosch will provide repairs without charge if the ovens "prove[] to have been manufactured *with a defect in materials or workmanship*." (Compl. ¶ 44 [emphases added].) And "the overwhelming weight of state law authority holds that design defects are not covered" under "materials and workmanship" warranties. *Sloan v. Gen Motors LLC*, 2017 WL 3283998, at *8 (N.D. Cal. Aug. 1, 2017) (collecting cases); *see also Pickens v. Mercedes-Benz USA, LLC*, 2021 WL 5050289, at *2 (N.D. Ill. Nov. 1, 2021) ("The Seventh Circuit has held that warranties for 'material and workmanship' do

not cover design defects."); *Rollolazo v. BMW of N. Am., LLC*, 2017 WL 6888501, at *8 (C.D. Cal. May 2, 2017) (dismissing express warranty claim because "Plaintiffs' claims for design defects may not be pursued under an express warranty for materials and workmanship"); *Martell*, 429 F. Supp. 3d at 1141 ("Finding no persuasive and authoritative analysis suggesting that the phrase 'materials and workmanship' should be read to include design defects, and a large body of law holding otherwise, the Court finds that the term 'materials or workmanship' in the warranty at issue applies only to manufacturing defects, not to design defects."). Accordingly, Plaintiffs' claim for breach of express warranty is **DISMISSED**.

### D. Breach of Implied Warranty

Bosch also argues that Plaintiffs cannot state a claim for breach of the implied warranty of merchantability because Bosch's Limited Product Warranty expressly and conspicuously disclaims and excludes all implied warranties.[3]  (Mot. at 9.)  The Court disagrees.

The disclaimer Bosch is referring to is found on page 35 of the "Built-in and Combination Ovens Use and Care Manual" for Bosch Microwave/Ovens model numbers HBL8463UC, HBL8443UC, HBL453UC, HBL753UC, and HBL87M53UC, and HBL8743UC.  In relevant part, the disclaimer provides (in all-caps):

---

[3] Bosch asks the Court to take judicial notice of its "Built-in and Combination Ovens Use and Care Manual" which contains the disclaimer at issue in this case.  (Dkt. 18-3 [Request for Judicial Notice].)  Plaintiffs do not oppose the request.   The Court may take judicial notice of "a fact that is not subject to reasonable dispute" when the fact is either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The Court has no reason to question the authenticity or accuracy of Bosch's Use and Care Manual.  Accordingly, the Court **GRANTS** Bosch's request for judicial notice.

1
2
3
4
5
6
7

TO THE EXTENT ALLOWED BY LAW, THIS WARRANTY SETS OUT YOUR EXCLUSIVE REMEDIES WITH RESPECT TO PRODUCT, WHETHER THE CLAIM ARISES IN CONTRACT OR TORT (INCLUDING STRICT LIABILITY, OR NEGLIGENCE) OR OTHERWISE.  THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED.  ANY WARRANTY IMPLIED BY LAW, WHETHER FOR MERCHHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE, SHALL BE EFFECTIVE ONLY FOR THE PERIOD THAT THIS EXPRESS LIMITED WARRANTY IS EFFECTIVE.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

"Under California Commercial Code Section 2316, the implied warranty of merchantability [or implied warranty of fitness] . . . may be excluded or modified if the language expressly mentions merchantability [or fitness] and is conspicuous." *Clark v. LG Elecs. U.S.A., Inc.*, 2013 WL 5816410, at *12 (S.D. Cal. Oct. 28, 2013).  The disclaimer here is not conspicuous.  The language is buried in the middle of a 75-page long user manual.  Though the text of the disclaimer appears in all caps, the text is not bolded, it appears at the very end of the manual's 2-page long description of the express warranty Bosch provides to its consumers, and it is not set-off by an independent header, or other contrasting feature, that would draw the reader's attention to the disclaimer.  *See Dorman v. Int'l Harvester Co.*, 46 Cal. App. 3d 11, 18 (1975) (explaining that the "slightly larger type face and location of the disclaimer" close to where plaintiff signed the contract was insufficient to show the disclaimer was conspicuous).  Therefore, the language here does not appear to be effective to disclaim the implied warranties at issue and Bosch's motion to dismiss this claim is **DENIED**.

23
24
25
26
27
28

Bosch's additional argument that Plaintiffs' claim for breach of an implied warranty fail because the Plaintiffs are not in vertical privity with Bosch is not persuasive.  (Mot. at 10–11.)  "Vertical privity is a prerequisite in California for recovery on a theory of breach of the implied warranties of fitness and merchantability." *U.S. Roofing, Inc. v. Credit Alliance Corp.*, 229 Cal. App. 3d 1431, 1441 (1991).  But there

are exceptions to this requirement.  "The law in California on third-party beneficiaries is well established.  By statue, Cal. Civ. Code § 1559, a third-party beneficiary may enforce a contract made expressly for his or her benefit."  *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability*, 754 F. Supp. 2d 1145, 1184 (C.D. Cal. 2010).  "Although courts applying California law regarding the third-party beneficiary exception to the vertical privity requirement of implied warranty claims have come to differing conclusions, the clear weight of authority compels a conclusion that [if] plaintiffs successfully plead third-party beneficiary status, they successfully plead a breach of implied warranty claim."  *Id.* (collecting cases).

Here, Plaintiffs sufficiently allege that they are the intended beneficiaries of the warranties applicable to the Microwave/Ovens.  (Compl. ¶¶ 42, 57.)  Plaintiffs point to Bosch's own express warranty as evidence that the consumers using the Microwave/Ovens are the intended beneficiaries, rather than the third-party retailers who purchased the units from Bosch directly, providing that Bosch promises to perform repairs once the user registers their Microwave/Oven and explains that Bosch will contact *consumers* directly if any issues are discovered.  (*Id.* ¶¶ 55–56 [emphasis added].)  Plaintiffs also allege that the limited warranty identifies the "first using purchaser" of the Microwave/Oven as the beneficiary of the warranty.  (*Id.* ¶ 42 n.7.)  At this stage in the litigation, these allegations are enough to state a claim for breach of implied warranty.  *See In re Toyota*, 754 F. Supp. 2d at 1185 ("[T]he Court concludes that where a plaintiff pleads that he or she is a third-party beneficiary to a contract that gives rise to the implied warranty of merchantability, he or she may assert a claim for the implied warranty's breach.  Here, Plaintiffs have pled that they purchased vehicles from a network of dealers who are agents of Defendants.  Like the plaintiffs in *Gilbert*, *Cartwright*, and *In re Sony VAIO*, Plaintiffs allege they were the intended consumers.  Like those plaintiffs, they allege facts tending to support that they are third-party beneficiaries; therefore, Plaintiffs' breach of implied warranty claim is not precluded by the lack of vertical privity.").

Accordingly, Bosch's motion to dismiss Plaintiffs' breach of implied warranty claim is **DENIED**.

### E. Fraudulent Concealment

Bosch argues that Plaintiffs' claim for fraudulent concealment is also deficient because Plaintiffs fail to allege that the alleged defect is an unreasonable safety hazard. (Mot. at 12–13.)  To state a claim for fraudulent concealment under California law, Plaintiff must allege "(1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact." *Graham v. Bank of America, N.A.*, 226 Cal. App. 4th 594, 606 (2014).  The crux of the parties' dispute concerns the second element of this claim: whether Bosch had a duty to disclose the defect Plaintiffs allege exist in the Microwave/Ovens.

Under California law, "[a] duty to disclose exists if one of four circumstances is present: (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff, or (4) the defendant makes partial representations but also suppresses some material facts." *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 986 (N.D. Cal. 2009).  Bosch concedes that Plaintiffs allege that Bosch had exclusive knowledge of and actively concealed the allege defect, (Mot. at 13), but argues that to state a claim under either theory, the Complaint must establish that the alleged defect presented an "unreasonable safety hazard." *See Avedisian v. Mercedes-Benz USA, LLC*, 45 F. Supp. 3d 1071, 1077 (C.D. Cal. Sept. 8, 2014) (holding that

"exclusive knowledge" and "active concealment" allegations both "require that an omitted fact be material.  Outside of representations made in the warranty, a defect is material only if it poses . . . an unreasonable safety hazard.").  But the Ninth Circuit, interpreting California law, has articulated that a defendant may have a duty to disclose when it "allegedly concealed a physical defect that was central to the products function."[4]  *Hodson v. Mars, Inc.*, 891 F.3d 857, 864 (9th Cir. 2018) (cleaned up).

Here, Plaintiffs have done exactly that.  They allege that "[t]he [c]ontrol [p]anel is essentially *the steering wheel* of the Microwave/Ovens, which cannot operate properly or safely without" it.  (Compl. ¶ 6 [emphasis added].)  They also allege that "[w]ithout a functioning display, the Microwave/Ovens become useless and/or dangerous" and explain that "[o]perating the Microwave/Ovens without being able to see the temperature, or the cooking time or mode undermines a consumer's ability to use the products to properly cook food[.]"  (*Id.* ¶ 29.)  Their allegations go further, contending that "[c]ooking using the Microwave/Ovens without a working display is akin to driving a car without a speedometer or other gauges that tell the driver critically important information."  (*Id.*)  Thus, Plaintiffs sufficiently allege that Bosch had a duty to disclose the defect.

---

[4] Bosch's contention that Plaintiffs are required to allege that the defect causes a safety hazard derives from another Ninth Circuit case interpreting California law, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012).  In *Hodson v. Mars, Inc.*, the Ninth Circuit explained that "recent California cases show that *Wilson's* safety hazard pleading requirement is not necessary in *all* omission cases, but that the requirement may remain applicable in some circumstances."  891 F.3d 857, 864 (9th Cir. 2018).  The Circuit explained that "where the challenged omission does not concern a central functional defect, the plaintiff may still have to plead a safety hazard to establish that the defendant had a duty to disclose.  For example, even though we offer no binding opinion on the issue, *Wilson* may still apply where the defect in question does not go to the central functionality of the product, but still creates a safety hazard."  *Id.*  At this stage, Plaintiffs have satisfied their pleading requirements under either the "central-functionality" test or the "unreasonable safety hazard test" because they allege that the defect in the control panels makes the Microwave/Ovens "dangerous" and could result in consumers "overheating food to a dangerous degree[.]"  (*See e.g.* Compl. ¶¶ 29, 51, 115, 154.)

Bosch also argues that Plaintiffs' fraudulent concealment claim must be dismissed on the additional ground that they fail to plead facts that plausibly show that Bosch knew about the alleged defects before each of the Plaintiffs' purchases of their respective Microwave/Ovens. (Mot. at 14–15.) Specifically, Bosch asserts that Plaintiffs contend that its knowledge of the defect before each of Plaintiffs' purchases is "established through consumer complaints that the Microwaves/Ovens failed during use." (Compl. ¶¶107, 109–114.) But according to Bosch, seven of the nine alleged customer complaints identified in the Complaint were made on a third-party website and "[c]omplaints on third-party websites do not, by themselves, commute knowledge to a manufacturer." (Mot. at 14 [citing *Resnick v. Hyundai Motor Am., Inc.*, 2017 WL 6549931, at *13 (C.D. Cal. Aug. 21, 2017). Moreover, Bosch contends that the two complaints that were made on Bosch's website "merely establish the fact that some consumers were complaining. By themselves they are insufficient to show that [Bosch] had knowledge that the [oven] was defective and sought to conceal that knowledge from consumers." (*Id.* [citing *Berenblat v. Apple, Inc.*, 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010)].)

But Bosch ignores the scope of Plaintiffs' allegations. This is not an instance in which Plaintiffs allege that Bosch had knowledge of the defect because a handful of individuals complained on third-party retail sites. Instead, Plaintiffs allege that there were "years of complaints regarding Control Panel display fade" and provide specific examples of Bosch consumers explaining the defect at issue. (*See e.g.*, *id.* ¶ 111 ["I have had this unit for 2 years now and the top display began to dim. I called Bosch and they said that there isn't a way to replace the bulb[.]"]; ["Works great but display fades prematurely if clock is left in default positition [sic]."]; ["I am positive about the performance, but there is a critical omission in the instruction book that has made a lot of very unhappy customers who have crossed Bosch off of their list forever . . . Most of the complaints are that the display grew too dim to use."].) These allegations are enough at

this stage of the litigation to plausibly allege that Bosch had knowledge of the defect at issue prior to Plaintiffs' purchase of the Microwave/Ovens.

Finally, Bosch alleges that Plaintiffs' fraudulent concealment claim fails because California's economic loss rule bars recovery since their fraudulent concealment claim is based exclusively on what Bosch omitted rather than what it affirmatively represented to consumers.  (Dkt. 25 [Defendant's Reply ISO MTD, hereinafter "Reply"] at 10.)  The Ninth Circuit recently certified a question—the answer to which would be dispositive on this issue—to the California Supreme Court.  *See Rattagan v. Uber Tech., Inc.*, 19 F.4th 1188, 1193 (9th Cir. 2021) (certifying "Under California law, are claims for fraudulent concealment exempted from the economic loss rule?" to the California Supreme Court).  The Court declines to resolve this issue while this question is currently pending before the California Supreme Court.  Accordingly, the parties are ordered to show cause in writing as to why Plaintiffs' fraudulent concealment claim should not be stayed until such guidance is provided by the California Supreme Court.

**F.  Claims Pursuant to California's Legal Remedies Act and California's Unfair Competition Law**

Bosch also argues that Ms. Hirsch's claims under California's Legal Remedies Act and California's Unfair Competition Law are time-barred.  Plaintiffs respond that Ms. Hirsch's claims are tolled by the "delayed discovery rule."  The Court agrees with Bosch that Ms. Hirsch's claims are time-barred and she does not allege sufficient facts to invoke the delayed discovery rule.

The statute of limitations for a claim under California's Legal Remedies Act is three years.  *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 909 (N.D. Cal. 2021).  The statute of limitations for California's Unfair Competition Law is four years.  *Beaver v. Tarsadia Hotels*, 29 F. Supp. 3d 1294, 1309 (S.D. Cal. 2014).  Ms. Hirsch alleges that she

purchased her oven in 2015 but did not file her claims until six years later.  (Compl. ¶ 60.)  Thus, unless the delayed discovery rule applies, Ms. Hirsch's claims are time-barred.

"[U]nder the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff *has reason to suspect an injury* and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action.  In that case, the statute of limitations for that cause of action will be tolled until such time as a reasonable investigation would have revealed its factual basis."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 803, 27 Cal.Rptr.3d 661, 110 P.3d 914 (2005) (emphasis added).  "[T]o rely on this rule, a plaintiff whose complaint shows on its face that [her] claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence."  *Finney v. Ford Motor Co.*, 2019 WL 79033, at *3 (N.D. Cal. Jan. 2, 2019) (internal quotations, alterations, and citations omitted).

Ms. Hirsch does not allege sufficient facts to show the time and manner of which she discovered the defect nor why she was not able to make such a discovery even when exercising reasonable diligence.  Instead, Ms. Hirsch alleges that "[o]n or around September 2019, Ms. Hirsch's Microwave/Oven display had faded to the point it was no longer reasonable, or acceptable for use."  (*Id.* ¶ 63.)  But this does not provide enough information on when Ms. Hirsch first noticed the defect, how she first noticed the defect, and why she was not able to discover the defect with reasonable diligence.  *See F.D.I.C. v. Varrasso*, 2012 WL 219046, at *7 (E.D. Cal. Jan. 23, 2012) ("Plaintiffs are required to 'plead around' the statute of limitations in their complaint where the statute of limitations has expired and the plaintiff is claiming an exception to

the statute of limitations such as tolling or delayed discovery.").  Accordingly, Ms.
Hirsch's claims for violations of the CLRA and UCL are **DISMISSED**.

### G. Claims Pursuant to Illinois' Consumer Fraud and Deceptive Business Practices Act, Colorado's Consumer Protection Act, and Florida's Deceptive and Unfair Trade Practices Act

Bosch also argues that Plaintiffs' claims under Illinois' Consumer Fraud and
Deceptive Business Practices Act, Colorado's Consumer Protection Act, and Florida's
Deceptive and Unfair Trade Practices Act must be dismissed because they are not stated
with enough particularity to satisfy Federal Rule of Civil Procedure 9(b).  Bosch is
correct that claims under all three consumer protection statutes "are subject to the same
heightened pleading standards as other fraud claims; as such, they must satisfy the
particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure."
*Greenberger v. GEICO General Ins. Co*., 631 F.3d 392, 399 (7th Cir. 2011); *Carrado v.
Daimler AG*, 2018 WL 4565562, at \*5 (D. Colo. Sept. 24, 2018); *Sunoptic Techs., LLC v.
Integra Luxtec, Inc.*, 2009 WL 722320, at \*2 (M.D. Fla. Mar. 18, 2009).  In opposition,
Plaintiffs argue that they have satisfied Rule 9(b)'s pleading requirements because their
claims are based upon Bosch's omissions in its materials concerning the
Microwave/Ovens as opposed to affirmative misrepresentations.  (Opp. at 9–10.)  The
Court agrees with Plaintiffs.

For alleged omissions, Plaintiffs must identify "the particular information that
should have been disclosed, the reason the information should have been disclosed, the
person who should have disclosed it, and the approximate time or circumstances in which
the information should have been disclosed."  *Allbrandt v. Bank of America, N.A.*, 2015
WL 1186660, at \*5 (D. Colo. Mar. 12, 2015).  "Conclusory allegations that a party
engaged in deceptive, unfair or unconscionable actions are insufficient to state a claim[.]"

*HW Aviation LLC v. Royal Sons, LLC*, 2008 WL 4327296, at \*6 (M.D. Fla. Sept. 17, 2008).

Here, Plaintiffs allege Bosch "through its website representations, warranties, owner's manuals, labeling and marketing, statements and representations made by employees receiving warranty claims, and through statements and representations made by its authorized retailer," made representations that the Microwave/Ovens "were not defective, were of high-quality, and were suitable for their purpose of safely and properly cooking and heating food." (Compl. ¶ 139.) Bosch also failed to inform consumers that "the Control Panel dims or fades to a point where the display panel is difficult or impossible to read, rendering the Microwave/Ovens unusable[.]" (*Id.* ¶ 140.) Plaintiffs' allegations are sufficient to show that Bosch should have disclosed the defective control panels to consumers before they purchased the Microwave/Ovens via their own representations. (*See id.* ¶¶ 141– 145.) Accordingly, Bosch's motion to dismiss Plaintiffs' consumer-protection claims pursuant to Illinois, Colorado, and Florida law is **DENIED**.

### H. Breach of Contract/Common Law Warranty Claim

Bosch also argues in a conclusory fashion that Plaintiffs' assertion of a "breach of contract/breach of common law warranty" claim in the alternative to its Uniform Commercial Code ("UCC") breach of warranty claim is improper because the UCC governs their claims. (Mot. at 24.) But Plaintiffs clearly plead these causes of action in the alternative, which they are permitted to do. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."). Accordingly, Bosch's motion to dismiss Plaintiffs' breach of contract and breach of common law warranty claim is **DENIED**.

### I.  Unjust Enrichment Claims

Bosch also moves to dismiss Plaintiffs' unjust enrichment claims.  (Mot. at 25.)  In their opposition, Plaintiffs withdraw their unjust enrichment claims.  (Opp. at 25.)  Therefore, Bosch's motion to dismiss Plaintiffs' unjust enrichment claim is **GRANTED**.

### J.  Leave to Amend

The Court **GRANTS** Plaintiff **LEAVE TO AMEND** the deficiencies identified in this order, except with respect to Plaintiffs' unjust enrichment claims which Plaintiffs have withdrawn.  Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted.  *See, e.g.*, *DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  "Although leave to amend 'shall be freely given when justice so requires,' it may be denied" where it "would not serve any purpose because to grant it would be futile in saving the plaintiff's suit."  *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1144 (9th Cir. 2015) (quoting Fed. R. Civ. P. 15(a)).  Defendants do not argue that amendment would be futile, and the Court has not independently identified any reason why that would be so.

## V.      CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.  The Court **DISMISSES WITH LEAVE TO AMEND** Plaintiffs' prayer for prospective injunctive relief pursuant to Illinois' Consumer Fraud and Deceptive Trade Practices Act, Colorado's Consumer Protection Act, and Florida's Deceptive and Unfair Trade Practices Act; Ms. Hirsch's California's Legal Remedies Act claim; Ms. Hirsch's California's Unfair Competition Law claim; and Plaintiffs' breach of express warranty claim.  The Court **DISMISSES WITH**

**PREJUDICE** Plaintiffs' unjust enrichment claim.  The Court **DENIES** Bosch's motion to dismiss all of Plaintiffs' remaining claims.  Plaintiff must file an amended complaint by **Monday, August 15, 2022**.

With respect to Plaintiffs' fraudulent concealment claim, the Court **ORDERS** the parties to show cause in writing why this claim should not be stayed pending the California Supreme Court's resolution of the Ninth Circuit's certified question concerning whether the economic loss rule bars this claim.  Plaintiffs shall file their position by **Monday, August 29, 2022**.  Bosch shall file their position in response by **Monday, September 19, 2022**.  And Plaintiffs may, but are not required to, file their reply by **Monday, October 17, 2022**.

DATED:     July 21, 2022

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE